# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

BITUMINOUS CASUALTY, )
CORPORATION, )
 )
    Plaintiff, )
 )
vs. ) Case No. CIV-11-210-JHP
 )
MARIAH O'KELLEY, as surviving )
spouse of JERRY D. O'KELLEY, )
deceased, )
 )
    Defendant. )
 )

## OPINION AND ORDER

Before the Court are Defendant Mariah O'Kelley's Motion to Dismiss and Alternative Motion to Transfer (Docket No. 12), Response of [Plaintiff] Bituminous Casualty Corporation to Defendant's Motion to Dismiss and Alternative Motion to Transfer (Docket No. 13), and Defendant Mariah O'Kelley's Reply Regarding Motion to Dismiss (Docket No. 15). For the reasons set forth below, Defendant's motion is **DENIED**.

## BACKGROUND

This action arises from an oil field accident in Okfuskee County, Oklahoma, on or around February 22, 2007, in which a workover rig owned by K & W Well Services, Inc. (K&W) fell over, resulting in the death of Jerry O'Kelley, Defendant's husband.[1] At the time of the accident, Mr. O'Kelley was working in the rod basket of the workover rig.[2] The workover rig was insured under

---

[1] Response of [Plaintiff] Bituminous Casualty Corporation to Defendant's Motion to Dismiss and Alternative Motion to Transfer and Brief in Support (Response) at 1, Docket No. 13.

[2] *Id.* at 1-2.

a policy issued by Plaintiff Bituminous Casualty Company (Bituminous).[3]

On May 12, 2011, Defendant's counsel sent a demand letter to Plaintiff claiming benefits under any Uninsured/Underinsured Motorist (UIM) policies K&W had obtained from Bituminous.[4] The demand letter included a copy of the Oklahoma Supreme Court's decision in *Ply v. National Union Fire Insurance Co.* and stated that *Ply* "makes clear the applicability of UIM coverage in this type of situation."[5] On June 15, 2011, Plaintiff Bituminous denied Defendant's claim and filed a Complaint for Declaratory Judgment with this Court.[6] It is from this Complaint that Defendant brings the instant Motion to Dismiss and Alternative Motion to Transfer.

## DISCUSSION

Defendant moves to dismiss Plaintiff's Complaint for Declaratory Judgment citing that this Court lacks subject matter jurisdiction.[7] In the event subject matter jurisdiction exists, Defendant then urges this Court to discretionarily dismiss Plaintiff's Complaint.[8] Should this Court find dismissal improper, Defendant alternatively requests that this Court transfer the case to the Western District of Oklahoma, where Plaintiff Bituminous is currently pursuing similar litigation.[9]

---

[3]Defendant Mariah O'Kelley's Motion to Dismiss and Alternative Motion to Transfer and Brief in Support (Motion to Dismiss) at 2, Docket No. 12.

[4]Response at 2, Docket No. 13.

[5]*Id. See also Ply*, 2003 OK 97, 81 P.3d 643.

[6]Motion to Dismiss at 2, Docket No. 12; Bituminous Casualty Corporation's Complaint for Declaratory Judgment (Complaint), Docket No. 2.

[7]Motion to Dismiss at 3, Docket No. 12.

[8]*Id.* at 7.

[9]*Id.* at 11 (*citing* Bituminous Cas. Corp. v. Pollard, Case No. CV-10-379-M).

**A. Motion to Dismiss**

    **1. Subject Matter Jurisdiction**

Defendant first claims that this Court lacks subject matter jurisdiction to hear Plaintiff's Complaint for Declaratory Judgment because there is no actual controversy at issue.[10] "[A] declaratory judgment plaintiff must present the court with a suit based on an 'actual controversy,' a requirement the Supreme Court has repeatedly equated to the Constitution's case-or-controversy requirement."[11] "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[12]

Defendant offers *Surefoot LC v. Sure Foot Corp.* in support of her contention that Plaintiff's Complaint presents no actual controversy for this Court to consider.[13] As Defendant notes, *Surefoot* hearkened back to Supreme Court formulations of the actual controversy requirement in *Aetna Life Insurance Co. v. Haworth* and *Maryland Casualty Co. v. Pacific Coal & Oil* Co.[14] Defendant fails to mention that, in both *Aetna* and *Maryland Casualty*, the Supreme Court found a substantial controversy warranting declaratory judgment existed when an insurance claimant's claim had been

---

[10]*Id.* at 3.

[11]Surefoot LC v. Sure Foot Corp., 531 F.3d 1236, 1240 (10th Cir.2008).

[12]Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

[13]Response at 4-5, Docket No. 12 (*citing* Surefoot LC v. Sure Foot Corp., 531 F.3d 1236, 1240 (10th Cir.2008)).

[14]*See* Motion to Dismiss at 5, Docket No. 12. *Surefoot*, 531 F.3d at 1244.

denied, but the claimant had yet to file suit against the insurer.[15]

In supporting its finding of an actual controversy in *Surefoot*, the Tenth Circuit relays the facts of *Aetna Life Insurance Co. v. Haworth*:

> In [*Aetna*] an insured repeatedly claimed coverage under certain insurance policies for a present disability, but never brought suit against the insurer; meanwhile, the insurer, though believing the insured was not entitled to any payment under the policies, felt compelled to maintain a sum of money in reserve to guard against the contingent liability posed by the insured's claims. Seeking to dispel the cloud that the insured's claims placed over the insurer's business affairs, and unwilling to wait until the insured finally (if ever) filed suit, the insurer sought a declaration of the insured's rights in federal court.[16]

The *Aetna* Court ultimately found there was a substantial controversy warranting declaratory judgment,[17] and the similarity of the facts in *Aetna* to those in the instant case offer firm support that Plaintiff's Complaint demonstrates a substantial controversy warranting declaratory judgment. Here, as in *Aetna*, Defendant claims coverage under an insurance policy, even citing case law that allegedly supports the claim. Here, as in *Aetna*, Plaintiff insurer believes Defendant is not entitled to payment under the policy, and here, as in *Aetna*, Plaintiff seeks a declaration of rights under the policy in an effort to remove the very real and very immediate impact on its business affairs posed by imminent litigation.

*Surefoot* points out that, in *Aetna,* multiple claims were made without suit, and that the

---

[15]*See* Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 239-40, 57 S.Ct. 461, 465, 81 L.Ed. 617 (1937); *Maryland Cas. Co.*, 312 U.S. at 274, 61 S.Ct. at 513, 85 L.Ed. 826. Note that the Tenth Circuit in *Surefoot* cited *Aetna* and *Maryland Casualty* as the "heartland of declaratory judgment cases." *See Surefoot*, 531 F.3d at 1245.

[16]*Surefoot*, 531 F.3d at 1245 (*citing Aetna*, 300 U.S. at 239-40, 57 S.Ct. at 461, 81 L.Ed. 617.

[17]*Aetna*, 300 U.S. at 243, 57 S.Ct. at 465, 81 L.Ed. 617.

4

company felt compelled to maintain reserve sums to guard against contingent liability.[18] Here, one claim, made through an attorney, citing case law allegedly supporting coverage, is enough to place the Plaintiff in the same costly cloud of uncertainty, while the injured defendant decides if she will ever file suit.[19]

Considering all the facts presented, the parties have taken adverse positions with respect to their existing rights and obligations regarding the UIM policy. This has created a substantial controversy between parties of adverse interests. Further, this Court's reading of *Aetna*, *Maryland Casualty*, and *Surefoot*, in light of the facts presented, support its finding that this substantial controversy is of sufficient immediacy and reality to warrant the issuance of declaratory judgment. As such, Defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

**2. Discretionary Dismissal**

Both the Supreme Court and the Tenth Circuit have made clear that, although the Declaratory Judgment Act gives federal courts competence to make a declaration of party rights, it does not impose any duty to do so.[20] With this in mind, Defendant next implores this Court to employ its

---

[18]*See Surefoot*, 531 F.3d at 1245 (*citing Aetna*, 300 U.S. at 239-40, 57 S.Ct. at 461, 81 L.Ed. 617.

[19]*See id.* (noting that without declaratory judgment, a cloud on business exists until insured "finally (if ever) files suit"). This Court's reasoning should not be mistaken for an application of a "reasonable apprehension test", which was soundly rejected by the Supreme Court in *MedImmune Inc. v. Genentech Inc.*, 549 U.S. 118, 132 n.11, 127 S.Ct. 764, 774, 166 L.Ed.2d 604 (2007) (finding case law contradicts Tenth Circuit's "reasonable apprehension of imminent suit" test). In the instant case, the thinly veiled threat of suit contained in Defendant's demand letter merely provides evidence that the instant controversy is both "real" and "immediate."

[20]State Farm Fire & Cas. Co., v. Mhoon, 31 F.3d 979, 982 (*citing* Public Affairs Assoc. Inc v. Rickover, 369 U.S. 111, 112, 82 S.Ct. 580, 581, 7 L.Ed.2d 604 (1962)).

discretion under the Declaratory Judgment Act and decline jurisdiction over Plaintiff's Complaint.[21]

The Tenth Circuit has adopted an expanded list of factors to weigh when deciding whether or not to hear a declaratory action.[22] These include:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata "; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.[23]

The Court now considers each of these factors in turn.

Here, the parties disagree as to whether or not Defendant's husband could rightfully be an "insured" under K&W's UIM policy.[24] A declaratory judgment as to whether or not coverage existed at the time of the accident would both settle this immediate controversy between the parties and would clarify the legal relations at issue as the litigation moves forward. Declaratory judgment would end uncertainty as to coverage by the Plaintiff and allow Defendant's claims to proceed against all appropriate parties.

Defendant makes the argument that the existence of a similar suit in the Western District of Oklahoma filed by Plaintiff Bituminous indicates that filing in the Eastern District evidences that Plaintiff is "forum shopping" or engaging in "procedural fencing."[25] The Court rejects this argument.

---

[21] Response at 7, Docket No. 12.

[22] *Mhoon*, 31 F.3d at 983

[23] *Id.*

[24] Response at 2-3, Docket No. 13.

[25] Motion to Dismiss at 8, Docket No. 12.

The existence of a similar suit for declaratory relief in the Western District, where the accident giving rise to that suit occurred, does little to indicate to this Court that Plaintiff is forum shopping. The accident in question here occurred in the Eastern District, thus Plaintiff's selection of this Court as its forum appears a natural choice. Defendant's later admission, that Plaintiff's Oklahoma offices, Plaintiff's attorneys, and a good deal of the witnesses reside in the Western District,[26] further serves to weaken Defendant's argument that Plaintiff is "forum shopping" in Eastern Oklahoma.

Defendant's claim that this suit would create friction between state and federal law is similarly unsupported.[27] Although the instant case concerns a question clearly of state law, the case offered by Defendant in support of her claims of federal/state friction clearly supports an opposite conclusion.[28] *Ply* better demonstrates that friction between federal and state law on this issue is minimal. In *Ply*, the Oklahoma Supreme Court was answering certified questions of law as certified to it by the United States District Court for the Northern District of Oklahoma.[29] The very nature of this action, a certified question of state law from a federal court to Oklahoma's highest judicial body, indicates an interplay on the instant issues between federal and state jurisdictions, not friction. Further, Oklahoma's Revised Uniform Certification of Questions of Law Act offers an avenue for this Court to make decisions involving evolving state law without fear of encroachment.[30]

---

[26]*Id.* at 10-11.

[27]*See id.* at 9.

[28]Defendant cites the parties' different interpretations of *Ply v. National Union Fire Insurance Co.,* as creating friction, but offers no clear reasoning to support this conclusion. *See* Motion to Dismiss at 9, Docket. No. 12 (*citing Ply*, 2003 OK 97, 81 P.3d 643).

[29]*Ply*, 2003 OK 97, ¶ 3 ,81 P.3d 643, 645.

[30]*See* OKLA. STAT. SUPP. 20, §§ 1601 et. seq. (1997).

Finally, looking for alternative remedies, this Court sees no better or more effective means of settling this controversy. The alternative proposed by Defendant, a dismissal until she decides a suit is proper, leaves Plaintiff contemplating possible liability to the Defendant while waiting in a costly holding pattern as to its own rights under the policy.

Weighing all of the factors above, this Court finds that declaratory relief is the best and most effective means of settling this coverage controversy and moving litigation forward. As such, Defendant's motion for discretionary dismissal is denied.

**B. Motion to Transfer**

As an alternative to dismissal, Defendant asks this court to transfer this case, pursuant to 28 U.S.C. § 1404(a), to the Western District of Oklahoma.[31] Section 1404(a) deals with the right to transfer an action properly filed and states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Although the Defendant admits the Eastern District of Oklahoma is a proper forum for the instant action, the inquiry does not end there. Because the Defendant seeks transfer, the Court must now examine the case under the traditional § 1404(a) factors to determine whether the case should be transferred to a more convenient district.

A "party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient."[32] The factors to consider in determining whether to transfer a case pursuant to § 1404(a) are:

---

[31] Motion to Dismiss at 10, Docket No. 12.

[32] Chrysler Credit Corp. v. County Chrysler, Inc., 928 F.2d 1509, 1515 (10th Cir.1991).

(1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (7) difficulties that may arise from congested dockets; (8) the possibility of the existence of questions arising in the area of conflict of laws; (9) the advantage of having a local court determine the questions of local law; and, (10) all other considerations of a practical nature that make a trial easy, expeditious, and economical.[33]

The Court first recognizes that the Plaintiff's choice of forum is the Eastern District of Oklahoma. In order to disturb this choice, Defendant must show the balance of the factors weigh strongly in favor of transfer.[34] Defendant cannot meet this standard. Although the parties and their attorneys live in the Western District, the accident occurred in the Eastern District, and many of the witnesses, including the investigating law enforcement personnel and the medical first responders, reside or work in the Eastern District. There is no argument as to the availability of compulsory process.

The actual site of the accident is in the Eastern District as well, making this district closest to many physical sources of proof and therefore likely reducing the cost of obtaining that proof. At a minimum, the cost of making the necessary proof will not be greater in the Eastern District. Further, Defendant offers no argument that trial in the Eastern District will pose any unique conflicts of law that would not be present in the Western District,[35] or that there is a distinct advantage to

---

[33]Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145, 147 (10th Cir.1967).

[34]William A. Smith Contracting Co. v. Travelers Indem. Co., 467 F.2d 662, 664 (10th Cir.1972).

[35]The Court does note Defendant's concern over inconsistent judgments arising from two similar cases progressing in two separate districts. However, under Oklahoma law, the interpretation of insurance contracts is done on a fact-intensive, case-by case basis, with factual distinctions minimizing the possibility of conflicting judgments. *See* Wickham v. Equity Fire & Cas. Co., 1994 OK CIV APP 148, ¶ 11, 889 P.2d 1258, 1260 (determination of policy (*cont.*)

having a local court decide this issue. Finally, Defendant declines to offer argument that trial in the Eastern District poses issues concerning judgment or enforceability, fair trial concerns, or difficulties associated with congested dockets. After considering all of these factors and all other considerations of a practical nature that make a trial easy, expeditious, and economical, this Court finds that transfer of this case to the Western District of Oklahoma is not warranted.

## **CONCLUSION**

For the reasons set forth herein, both Defendant Mariah O'Kelley's Motion to Dismiss and Alternative Motion to Transfer are DENIED.

IT IS SO ORDERED this 12th day of October, 2011.

*[signature]*
James H. Payne
United States District Judge
Eastern District of Oklahoma

---

(*cont.*) definitions a case-by case analysis considering "the circumstances of the accident, the use of the vehicle, the relevant terms of the policy at issue, and any underlying public policy concerns").